## RE FULLAGAR.

PATENTS; REISSUE.

1. That part of rule 87 of the Patent Office requiring a sworn statement
to accompany a petition for a reissue, to the effect that the appli-
cant verily believes the original patent to be inoperative or invalid,
and giving the reason why, and particularly specifying the errors
which it is claimed constitute the inadvertence, accident, or mistake
relied on, and how they arose or occurred, is not inconsistent with
Sec. 4916, Rev. Stat., relating to such matters, and was therefore
within the power of the commissioner to promulgate, although other
portions of the rule may possibly go beyond the power conferred.

2. On an appeal from a decision of the Commissioner of Patents rejecting
an application for the reissue of a patent of a fluid pressure tur-
bine, on the ground that the showing of inadvertence, accident, and
mistake in the claims of the patent was not sufficient, and further
because of the delay in applying for the reissue, it was *held*, on a
review of the evidence, that there was not such a satisfactory show-
ing as to justify a reversal of the decision.

No. 837. Patent Appeals. Submitted March 11, 1913. Decided June 2,
1913.

HEARING on an appeal from a decision of the Commissioner of Patents refusing application for the reissue of a patent.

*Affirmed.*

The facts are stated in the opinion.

*Mr. Thomas F. Sheridan* and *Mr. George L. Wilkinson,* for the appellant:

1. Reissue applications are not required to be supported by a verified showing, and hence the insufficiency of a verified showing affords no ground for rejecting appellant's reissue application.   U. S. Rev. Stat. sec. 4916; *Gold & Stock Tel. Co.* v. *Wiley,* 17 Fed. 234; *Hartshorn* v. *Eagle Shade Roller Co.* 18 Fed. 90; *Justi* v. *Clark,* 108 Fed. 659.

2. An applicant for a reissue of a patent is only chargeable with the delay intervening between the discovery of the inadvertence, accident, or mistake, and the filing of the reissue application to correct such inadvertence, accident, or mistake. Robinson, Patents, vol. II, sec. 691, and vol. II, note 2, p. 399; *Wollensak* v. *Reiher,* 115 U. S. 96; *Wollensak* v. *Sargent,* 151 U. S. 221; *Poppenheusen* v. *Falke,* 2 Fish. Pat. Cas. 213; *Matthews* v. *Flower,* 25 Fed. 834; *Heubel* v. *Waldie,* 35 Fed. 414; *Maitland* v. *Goetz Mfg. Co.* 86 Fed. 124; *Milloy Electric Co.* v. *Thomson-Houston Electric Co.* 148 Fed. 843; *Thomson-Houston Electric Co.* v. *Western Electric Co.* 158 Fed. 813.

3. Appellant's reissue application was not filed to secure a broader monopoly than that afforded by his original patent, but to correct a mutual mistake of the Patent Office and appellant.   *Eames* v. *Andrews,* 122 U. S. 701; *Reed* v. *Chase,* 25 Fed. 94; *Heubel* v. *Nadie,* 35 Fed. 414.

4. In the absence of actual intervening rights, a delay of two years or more is not necessarily fatal, even in the case of broadened reissues.   *Topliff* v. *Topliff,* 145 U. S. 156; *Miller* v. *Bridgeport Brass Co.* 104 U. S. 350; *Coon* v. *Wilson,* 113 U. S. 268; *Mahn* v. *Harwood,* 112 U. S. 354; *White* v. *Dunbar,* 119

U. S. 47; *Thompson* v. *Wooster,* 114 U. S. 104; *Re Heroult,* 29 App. D. C. 42.

5. Even if appellant's application were for a broader reissue, and even if he were to be charged with delay from the date of his original patent, he would nevertheless be entitled to his reissue patent, in view of the Patent Office proceedings which occurred between the granting of the original patent and the filing of the reissue application. *Newton* v. *Woodward,* 17 App. D. C. 34; *Morey* v. *Lockwood,* 8 Wall. 75 U. S. 230.

6. A reissue applicant who has complied with the requirements of U. S. Rev. Stat. sec. 4916, can only be refused a reissue patent on the ground of abandonment of the invention, and there must be at least a presumption of an intention to abandon the invention. Robinson, Patents, vol. I, pp. 475, 478; *Crown Cork Co.* v. *Aluminum Co.* 108 Fed. 845; *Ide* v. *Trorlicht,* 115 Fed. 137.

*Mr. Robert F. Whitehead,* for the Commissioner of Patents:

1. The reissue statute (sec. 4916 of the Rev. Stat.) does not specifically require that an applicant must state under oath the facts relied upon to show that the error in taking out a patent which is inoperative or invalid arose through inadvertence, accident, or mistake, but it is only when such inadvertence, accident, or mistake is established that the Commissioner has any authority to grant a reissue. *General Electric Co.* v. *Richmond Street R. Co.* 178 Fed. 84.

2. Rule 87 of the rules of practice, however, relating to reissues, specifically requires that this statement of facts relied upon shall be under oath. This rule is clearly not in conflict with the statute, and it has been repeatedly held by this court that under such circumstances the rule has all the force of law. *Steinmetz* v. *Allen,* 104 O. G. 853, 22 App. D. C. 56; *Allen* v. *Lowry,* 116 O. G. 2253, 26 App. D. C. 8; *Broadwell* v. *Long,* 164 O. G. 252, 36 App. D. C. 418.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents refusing an application for the reissue of a patent.

The proceeding has a confusing history on account of several preceding reissues and applications and interferences growing out of the same. The subject-matter of the invention is a fluid pressure turbine.

Hugh Francis Fullagar was granted a patent for such a turbine on an application filed April 18, 1901, for which an application for reissue was made also. Another application was filed by him September 16, 1901, on which a patent having sixteen claims (No. 746,061) was issued December 8, 1903. The present case involves the reissue of this patent.

One Emmett filed an application for a fluid pressure turbine, February 24, 1902. May 12, 1903, interference was declared between Emmett's application and that of Fullagar filed September 16, 1901, as aforesaid. The issue was: "As an article of manufacture, a cover section for the ends of turbine vanes or buckets, comprising a sheet or strip of metal having notches or slots at the ends and two or more openings between the ends, the said openings having parallel sides and covered ends." The interference was dissolved by the Primary Examiner on the ground that Fullagar's application did not contain a foundation for the claim. He suggested that Fullagar amend by canceling the word "section," and that Emmett substitute "section of a cover," for "cover section." The application of Fullagar disclosed a part referred to as a baffler, extending around the blades affixed to the disks and operating as a cover therefor; claims 7 to 15, inclusive, of his patent as issued, refer to this cover as a "baffler" in general terms. Fullagar accepted this decision, and amended the same, which then became claim 16 of his patent that was issued December 8, 1903. Claim 16 reads as follows: "As an article of manufacture, a baffler for the ends of turbine blades or buckets, comprising a sheet or strip of metal having notches or slots at the ends and two or more openings between the ends, the said openings having parallel sides and curved ends." Em-

mett then amended, copying claim 16 of Fullagar's patent, and another interference was declared.    July 21, 1906, on final appeal, the Commissioner awarded priority to Emmett on the ground that Fullagar was not entitled to make the claim of the issue, because he did not show a sheet or strip of metal having notches or slots at the ends, as required by the issue.    Emmett's cover or baffler was made in sections, which have notches at the ends that fit around the tenon of the vane at the meeting points.    Fullagar's baffler consisted of one piece, the openings in which fitted to the tenons of the vanes, and the two ends joined by lapping, apparently, had no notches.    On November 8, 1904, Fullagar had applied for reissue of his other application, but did not present therein the claims involved in this appeal; said reissue had been granted February 14, 1905.    No appeal was taken by Fullagar from the decision aforesaid; but on October 31, 1906, he applied for a second reissue of the last-named patent, and interference was declared between it and Emmett's pending application.    January 7, 1907, Fullagar applied for reissue of his patent No. 746,061, and it and the former one, also, were placed in interference with Emmett; the single count of the issue corresponding to claim 23 of Emmett's application.    July 21, 1908, the Commissioner dissolved both interferences on the ground that the showing made by Fullagar was not sufficient to justify the reissues applied for.    Fullagar appealed from that decision, but his appeal was dismissed.    *Re Fullagar,* 32 App. D. C. 222.    The dismissal was on the ground that it was an *ex parte* appeal from a decision refusing a patent, and had to be rejected a second time, and appealed in due course as required by the statute.    Urging his application anew in the Patent Office, the same has been again denied, and he is rightfully here on appeal.

The claims that were rejected and are appealed are the following:

31. In a turbine, the combination of a plurality of vanes, a sectional covering for the ends of the vanes, and means formed integral with the vanes for securing the sections in place.

32. In a turbine, the combination of a plurality of vanes, a

sectional covering for the ends of the vanes, each section being provided with a plurality of openings registering with the vanes, and tenons which pass through the openings and are riveted thereon to hold the sections in place.

33. As an article of manufacture, a turbine element comprising a body portion having a plurality of vanes or buckets radiating from a common center, tenons formed integral therewith, and a jointed cover which is secured in place by the tenons.

34. A turbine comprising a plurality of vanes or buckets, in combination with a detachable baffling ring forming a cover containing openings which correspond in shape to the end portions of the vanes or buckets.

35. In a turbine, the combination of vanes or buckets having curved front and rear faces, tenons formed in the buckets having two flat surfaces and two surfaces which partake of the curvature of the buckets, and a cover having openings therein which register with and correspond in shape to the tenons.

36. A turbine provided with a plurality of vanes or buckets having tenons on their free ends, and a covering for the ends of such vanes or buckets having openings registering with and fitting the tenons, said openings having parallel sides and curved ends.

37. In a turbine, the combination of a carrier, a ring of blades secured thereto at one end, said blades being cut away at their opposite ends to form tenons, and a baffling ring forming a cover for the ends of the blades, said baffling ring being provided with openings corresponding in shape and size to the tenons on the blades.

Claim 16 of the patent covers a baffler having notches or slots at the ends; and this claim, it will be remembered, was held, in the interference case, not to be within the disclosure of the application, because, while the openings therein were described, there were no notches or slots in the ends of the baffler. The aforesaid claims in the last reissue application were not rejected for this reason, but because the showing of inadvertence, accident, and mistake in the claims of the patent was not sufficient, and further because of the delay in applying for the reissue.

Section 4916, Rev. Stat. U S. Comp. Stat. 1901, p. 3393, governing the reissue of patents, while committing to the Commissioner the ascertainment of the fact that the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, does not specifically require that the applicant must make oath to his application. On the other hand, the statute does not require the Commissioner to grant the reisue upon the mere statement of the applicant that the omission from his patent was the result of inadvertence, accident, or mistake. The evidence supporting the claim must be satisfactory to him, and no provision is made for the manner of taking or hearing such proof. Rule 87 of the Patent Office undertakes to specify the manner in which preliminary proof, at least, shall be submitted. It provides that a sworn statement shall accompany the petition to the effect, among other things, that the applicant verily believes the original patent to be inoperative or invalid, and the reason why; and particularly specifying the errors which it is claimed constitute the inadvertence, accident, or mistake relied on, and how they arose or occurred. The requirement of a sworn statement has been attacked as beyond the power of the Commissioner. As the applicant in this case conformed to the rule in making a sworn statement, and has not asked leave to submit any additional proof in support of his application, the question of the validity of rule 87 does not necessarily arise. It may be remarked, however, that the patent statutes authorize the adoption of rules of practice in the office, which, of course, must not be inconsistent with the statutes themselves. While some of the requirements of rule 87 may possibly go beyond the power conferred,—a matter which we are not now called upon to decide,—there is nothing in so much of the rule as is mentioned above that is inconsistent with the statute.

It is of advantage to applicants in that it provides a ready, speedy, and inexpensive way to make a prima facie case, which, when not inconsistent with the record of proceedings in the Office in the matter of the original patent, may be accepted as sufficient.

The sworn statement of the applicant is to the effect that the
original patent is inoperative for the reason that the specification
is insufficient in the omission to claim adequately the construc-
tion of the vanes and for the coverings for the ends of the vanes,
and in the omission to claim adequately that which had been
really invented, as set forth in the specifications of the patent.
The errors which arose from inadvertence, accident, or mistake
are thus stated: "Deponent, at the time of making his appli-
cation, was misled as to the state of the art in this class of in-
ventions, and although he had made a diligent search and en-
deavored to inform himself in every possible way in regard there-
to, he was at this time aware of the fact that one Rateau had
built a turbine containing vanes having a cover strip riveted on
the outer ends thereof, the rivets being formed integral with the
vanes for securing the cover section in place, and that a turbine
embodying this invention was built at the works of the Ma-
chinenfabrik Oerlikon, at Oerlikon, near Zurich, Switzerland,
during the year 1901. Deponent, however, being misled and
mistaken as to the facts pertaining to the date of Rateau's in-
vention, believed at the time that Rateau's invention was prior
to his own, so far as the claims now added to this application are
concerned, and that because of this he could not make the
necessary oath that he verily believed himself to be the original,
first, and the sole inventor of this subject-matter."

He further undertakes to account for his delay of over four
years by the statement that his patent was, within a few weeks
after its grant,—December 8, 1903,—placed in interference
which had not been finally decided until November 13, 1906;
that under the rules of the Office he could not apply for reissue
pending said interference; and that it was made as soon there-
after as possible. Further stating in detail that he was the
first inventor, and the facts supporting the statement, he con-
cludes as follows: "That his failure to include the claims in
his original application, or to immediately apply for a reissue
thereof, was due wholly to his mistake as to the facts surround-
ing Rateau's alleged invention, and to the fact that it was im-
possible for him earlier to make this application because of the
pendency of the interference above referred to."

Applicant filed another affidavit on his application for reissue of his other patent that was considered with this, in which he repeats his mistake as to Rateau's invention, and says that, while a description of the Rateau turbine had been first published in April, 1902, "he had been informed thereof long prior to the date of said publication." He further says that "it is only recently that he has been aware of the true facts regarding Rateau's invention, which was made, to the best of deponent's knowledge and belief, subsequent to the filing date of deponent's original patent." He further accounts for his mistake by the fact that he presumed his attorney in the United States had prepared claims commensurate with his invention, which would fully protect him, and, because unfamiliar with United States patent laws and interpretation of claims, did not, when the patent was received, discover the mistake. He next gives a history of the proceedings in interference with Emmett with the issue before stated, which is now claim 16 of the original patent, and the decision of the Commissioner thereon, until which time he was not aware that his description was not sufficient, etc. In conclusion he says that his former affidavit set forth only the mistake in failing to claim the broad subject-matter of a turbine comprising vanes having a covering or baffles secured around the ends by tenons on the ends of the vanes, etc., and did not set forth the errors constituting the mistake to claim in his original patent, the specific construction of the blades and covering comprising a sectional covering with openings, etc. That he thought it only necessary then to set forth the reasons for the failure to claim the broad subject-matter, and not necesary to set forth the mistake in failing to claim the more specific construction, etc. That the concluding allegation of the former affidavit relating to Rateau's alleged invention had reference to the claims covering the broad subject-matter embodied in the Rateau turbine comprising a covering for the ends of the vanes and means formed integral with the ends for securing the covering in place; and did not have reference to the specific subject-matter of a covering composed of sheets or strips of metal sections having openings therein registering with tenons on the ends of the

vanes, "inasmuch as such specific subject-matter was not embodied in the Rateau turbine." The Commissioner permitted the filing of this amended affidavit, and, while it was filed in support of the copending application for reissue of the other turbine patent, considered it as in support of this one also, on account of their substantial identity; and upon such consideration declined to grant the reissue, because not satisfied with the showing either of inadvertence, accident, or mistake, or of diligence. The showing made is not of such satisfactory character as to justify us in reversing his decision. In his original affidavit in support of this application, applicant explains his failure to claim adequately the construction of his baffler, by the fact that he was aware that Rateau "had built a turbine containing vanes having a cover strip riveted on the outer ends thereof, the rivets being formed integral with the vanes for securing the cover section in place." This turbine was in operation in a near-by country; there was a publication of it in April, 1902, which he saw, but states that he heard of said turbine long prior thereto. The application for his original patent was filed not very long before, namely, September 16, 1901. With the years intervening between that application and the date of this for reissue,—January 7, 1907,—during which his attention was called to applications containing specifications showing a similar construction, with certain claims of which he was in interference twice, he took no steps to verify the dates or specific subject-matter of Rateau's invention, or to correct the mistake of his American solicitor in not making specific claims. The amended affidavit states that "it is only recently that he has become aware of the true state of facts regarding Rateau's invention," but gives no reason for his failure to make an earlier discovery. Nor is his explanation in the amended affidavit of the recital of the first relating to Rateau's invention satisfactory; he should reasonably have known as much about that invention before the issue of his original patent, as he did when he made the two affidavits. And again, in another part of his amended affidavit, he substantially admits that he expected his original patent to claim the specific construction of his baffler, but his attorney did not

understand the full scope of his invention; and that, presuming that his attorney had made claims commensurate with his invention, he did not, owing to his unfamiliarity with United States patent law and the prevailing principles of interpretation of claims thereunder, discover the error on receipt of the patent.

The fact that the claims of the original patent did not cover the specific construction of the baffler or covering should have been apparent upon ordinary inspection; and the most reasonable inference is that the omission was due, as indicated in his first affidavit, to his belief that the cover section had been invented and put in practice by Rateau.

It did not require the decision of the Commissioner made in the interference with Emmett that Fullagar was not entitled to the notched end cover section, to put the latter upon notice of the omission to claim the specific construction of his own cover or baffler.

His failure to prosecute inquiries into the dates and details of Rateau's invention and construction may be attributed to the fact that his patent issued December 8, 1903, had been assigned to one Tweedy on the 24th of the same month.    Tweedy assigned to the Allis-Chalmers Company, of New Jersey and Milwaukee, on June 13, 1905, and on its behalf, and under its direction, the subsequent proceedings have been taken.

In this view it is unnecessary to consider whether the delay in applying for reissue is excusable upon other grounds relied on. The decision is affirmed; and this decision will be certified to the Commissioner of Patents.                    *Affirmed.*