**Application of David B. WITTRY.**
**Patent Appeal No. 9089.**

United States Court of Customs
and Patent Appeals.
Jan. 10, 1974.
Reconsideration Denied March 28, 1974.

Theodore H. Lassagne, Los Angeles, Cal., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection of claims 1–4, 6–13 and 15–28, all the remaining claims in appellant's application serial No. 862,985, filed August 19, 1969 for reissue of patent No. 3,107,297, issued October 15, 1963. The decision is affirmed as to claims 16–20 and 22–28 and reversed as to claims 1–4, 6–13, 15 and 21.

### The Invention

The invention relates to an "Electron Probe X-Ray Analyzer Wherein the Emitted X-Radiation Passes Through the Objective Lens." Instruments of this type are used for quantitatively determining the chemical composition of a relatively minute portion of a material by bombarding the portion with electrons

and measuring the X-ray emission caused thereby. Fig. 3 is illustrative:

**FIG. 3**

An electron gun (not shown) projects electrons vertically downward onto a specimen 36 being analyzed. Resulting X-rays, passing upwardly along the dashed line to a crystal 66, are projected by the crystal to a spectrometer for analysis. A magnetic housing 54 enclosing an electromagnet 62 is shaped to provide a central opening 68 for receiving a holder for the specimen 36 adjacent two spaced plate members 50 and 52. A magnetic gap is formed by conically tapered coaxial apertures 56 and 58, respectively, in the plates 50 and 52, said apertures being shaped to lie upon the conical surface, the apex of which lies at the focus of the lens formed thereby to focus the electron beam on a minute portion of the specimen located at that point. The tapering of the magnetic gap in the direction of the electron beam is said to minimize the magnetic field of the lens to permit analysis of ferromagnetic specimens without significantly affecting the electronic optical properties of the lens. An important feature of the lens is

that improved results are provided in that X-rays directed at a relatively large angle to the specimen surface can be passed to the spectrometer for analysis. Elements 38, 82, 74, 80 and 76 constitute a system for optical examination of the specimen.

Claim 3, which appellant terms his broadest patent claim, reads:

3. Apparatus for irradiating a material with electrons and sensing X-rays emitted by the material in response to such irradiation comprising means for directing an electron beam upon the surface of a specimen material, an electron lens for focusing the beam upon a selected region of the specimen surface, said electron lens including a member defining a magnetic gap coaxially aligned with and tapered in the direction of the electron beam, means for supporting a specimen adjacent to the apical end of said gap, and means for sensing X-rays emitted by a specimen so supported and passing through said lens.

Claim 17 emphasizes a different aspect of the invention and reads as follows:

17. Apparatus for irradiating a material with electrons and sensing X-ray emitted by the material in response to such irradiation comprising means for directing an electron beam upon the surface of a specimen material, said directing means including a magnetic lens for focusing the beam upon a selected region of the specimen surface, said magnetic lens including a plate member normal to the electron beam and having a relatively small opening therethrough shaped to lie on a conical surface converging to a focus of said lens beyond said plate member in the direction of the electron beam and coaxially disposed with the electron beam, and a coil housing extended from said member on the opposite side thereof from the point of origination of the electron beam, said coil housing being annular in form and having a central opening substan-

tially larger than the opening through said plate member to permit placement of a specimen substantially larger than the opening through said plate member at the focus of said lens closely adjacent to said plate member on the same side thereof as said coil housing.

### The Rejection

Of the appealed claims, claims 1–4, 6–13 and 15 are from the original patent and claims 16–28 are new claims. Claims 16, 18–20, 22, 23 and 25–28 are rejected as being broadened claims in a reissue application filed outside the two year statutory period (35 U.S.C. § 251) and as drawn to new matter. Claims 16–20, 23 and 25 are rejected as unpatentable under 35 U.S.C. § 103 over certain prior art. All the claims stand rejected as not being supported by a sufficient reissue declaration or oath.

### OPINION

The patent statutes limit the Commissioner's reissue authority to patents which are, through error and without deceptive intention, deemed wholly or partly inoperative or invalid, "by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent." 35 U.S.C. § 251. As recognized in In re Doll, 419 F.2d 925, 57 CCPA 822 (1970), requirements for reissue oaths are set forth in Rule 175, which reads in pertinent part:

175. Reissue oath or declaration. (a) Applicants for reissue, in addition to complying with the requirements of the first sentence of rule 65, must also file with their applications a statement under oath or declaration as follows:

(1) That applicant verily believes the original patent to be wholly or partly inoperative or invalid, and the reasons why.

(2) When it is claimed that such patent is so inoperative or invalid "by reason of a defective specification or

drawing," particularly specifying such defects.

(3) When it is claimed that such patent is inoperative or invalid "by reason of the patentee claiming more or less than he had a right to claim in the patent," distinctly specifying the excess or insufficiency in the claims.

(4) Particularly specifying the errors relied upon, and how they arose or occurred.

Appellant does not question the validity of Rule 175 as establishing the criteria by which the Commissioner is to measure his determination of propriety of reissue under § 251. Cf. Ex parte Fullagar, 40 App.D.C. 510, 1913 C.D. 444 (1913).

Appellant, in a declaration accompanying the reissue application, stated that he believed his patent to be · "possibly partly inoperative" because of the inadequacy of description of the objective lens. He referred to the inadequacy as lying in the description of the lens apertures 56 and 58 and as rendering the terminology employed in certain of the claims subject to misinterpretation, the nature of which was not indicated. Nor was any explanation given as to how claims 16–22, the new claims then in the application, obviated the "misinterpretation." Appellant further indicated that his assignee, upon bringing suit for infringement, was advised of prior art, certain of which was unknown to him prior to filing the original patent application.

Appellant subsequently filed a supplemental declaration, indicating that there was some problem in construing the term "through the lens" in patent claims 3, 10 and 11. He further asserted that the conical wall taper of at least the lens aperture nearest the specimen assumed a new importance in light of prior art produced by the defendant in the suit. He also declared that "more limited" claims 17 and 21 were substituted for patent claims 5 and 14, respectively, which were "regarded as not sufficiently definite to distingush from

such prior art." However, as to claims 16, 18–20 and 22–28, the supplemental declaration merely asserted that they "additionally and more clearly define the invention while also distinguishing it from the prior art."

In sustaining the rejection, the board considered the original claims as drawn to a structure in which the returned X-rays pass through the magnetic lens and the reissue claims, for the most part, as drawn to a structure in which the returned X-rays need not pass through the entire lens. It further stated that "a reissue declaration that fails to advance any convincing reason for such a change in structure is defective."

We find that the description in the patent of lens apertures 56 and 58 is entirely adequate to provide an understanding of the invention and the claims, particularly in view of the drawing. Nothing in appellant's declarations explains how the additions in the reissue specification correct any error therein, or how they have any effect on the original claims.

■■■ Additionally, the declarations do not present any reasonable explanation of any errors in the original claims which the reissue would overcome. As to claims 16, 18–20 and 22–28, the declarations do not assert that there was any error by reason of the patentee claiming more or less than he had a right to claim or specify the excess or insufficiency required by Rule 175(a)(3). The failure to assert a difference in scope between the original and reissue claims is a fatal defect. The patent statutes afford no authority for the reissue of a patent merely to add other claims of the same scope as those already granted. See In re Rogoff, 261 F.2d 601, 606, 46 CCPA 733, 738 (1958). The case as to these claims is distinguishable from *Doll*, supra, wherein the reissue oath stated that none of the patent claims afforded protection to a specified embodiment of the invention covered by the new reissue claims. The rejection of claims 16, 18–20 and 22–28 for insuffi-

ciency of the reissue declaration is affirmed.

 The rejection for insufficient reissue declaration is reversed as to claims 17 and 21. The supplemental declaration clearly stated that those claims were substituted for and more limited than claims 5 and 14 of the patent and that said claims 5 and 14 were not sufficiently definite to define over the new prior art. We regard those statements as complying with Rule 175 under the circumstances of this case.

Claim 17 was also rejected for obviousness in view of Duncumb[1] and Telonde.[2]

The Duncumb reference shows an emission microscope structure in which the coil housing has a central opening substantially larger than the openings in the plates forming the magnetic lens and receives a specimen as defined in claim 17, supra. Telonde relates to a similar instrument, with spaced housing plates forming the gap for the magnetic lens, having openings of different sizes, lying on a conical surface, and converging to focus on a specimen. Telonde's housing opening is, however, on the opposite side of the lens from the specimen, that is, on the side through which the electron beam is projected.

We fully agree with the examiner that "it would be [sic] obvious that the coil [with its housing] could be positioned on either side of the magnetic beam gap relative to the beam axis in view of the alternative locations" shown in the two references. The rejection of claim 17 on the prior art is, therefore, affirmed.

New claim 21 was rejected only on the basis of the insufficiency of appellant's reissue declarations. Our reversal of that rejection indicates a possibility that a reissue patent may eventually be obtained by appellant. Hence the rejection of original patent claims 1–4, 6–13 and 15 for insufficiency of the reissue declaration must be reversed.[3]

In view of the foregoing, no useful purpose would be served in a discussion of the rejections based on claim breadth, on the presence of new matter or, except for claim 17 discussed above, under 35 U.S.C. § 103.

In summary, the rejection of claims 16, 18–20 and 22–28 for insufficiency of the reissue declarations is affirmed, the rejection of claim 17 under 35 U.S.C. § 103 is affirmed, and the rejection of claims 1–4, 6–13, 15 and 21 is reversed.

Modified.

---

1. *A Scanning Microscope for X-Ray Emission Pictures*, by P. Duncumb and V. E. Cosslett, from X-Ray Microscopy and Microradiography, edited by V. E. Cosslett et al., Academic Press, Inc., New York, 1957, pp. 374–380.

2. *The Electronic Micro-probe*, from Telonde, No. 2, 1957, pp. 30–36 (English translation from French).

3. We are aware that Section 1401.8 MPEP states:

A ruling that the oath or declaration is insufficient should be made a general ground of rejection of all claims.

That instruction obviously is not applicable to original patent claims where, as here, the insufficiency does not apply to *all the new* claims in the reissue application.