**Application of William F. ALTENPOHL, Jr.**

**Patent Appeal No. 74–500.**

United States Court of Customs and Patent Appeals.

Aug. 15, 1974.

Rehearing Denied Sept. 26, 1974.

Harvey B. Jacobson, Jr., Washington, D. C., Jacob Shuster, Arlington, Va., attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from a decision of the Patent Office Board of Appeals, affirming the rejection of claims 1–20, all the claims in application serial No. 185,241, filed October 22, 1971, for reissue of patent No. 3,132,373, issued May 12, 1964, for "Poultry Shackle for Overhead Conveyor and Carriage Assembly." We reverse in part and affirm in part.

### THE INVENTION

The invention comprises a poultry shackle for an overhead conveyor system for transporting poultry through a processing plant. It is capable of holding the poultry in a variety of positions during various processing steps including: killing, cleaning, plucking, dressing, evisceration, weighing, and inspection. The following simplified drawings from appellant's illustrate the invention [numerals added in brackets]:

With respect to the above drawings, claims 12, 14, and 16—the only claims rejected as unpatentable over prior art— explain the invention, with the under-scored limitations allegedly defining the improvements over the art [bracketed numerals added]:

12. A poultry shackle for use with an overhead conveyor system comprising a relatively stationary body com-

ponent having *a vertical support post* [42], means [80] pivotally mounted upon said body component and cooperating with the latter for releasably supporting an extremity of a fowl, *a latch* [130, with bolt 134 engageable with shoulder 92 of member 80] *slidably and guidingly secured to said support post for vertical movement,* said pivotally mounted means [80] having a latch surface [92] engageable by said latch for locking said pivotally mounted means in a poultry extremity retaining position, said pivotally mounted means being arranged for gravity actuated movement to a fowl extremity releasing position upon disengagement of said latch therefrom.

14. An article carrier comprising *a vertical support body* [42] *having a bifurcated lower end* [76], *a support member* [80] *pivotally mounted in said bifurcated lower end* [76] for gravity

tilting about a horizontal axis [86], a hook [94] secured to said support member laterally to one side of and above said horizontal axis [86] and directed upwardly and outwardly relative to said horizontal axis and having spaced upper ends, *a latch means* [130, with bolt 134 engageable with shoulder 92 of member 80] *releasably connecting said body* [42] *and support member* [80] and retaining the latter against tilting and means [132] for releasing said latch means.

16. The combination of claim 14 wherein said support member [80] comprises a plate.

## THE ALTENPOHL, SR. REFERENCE

This reference[1] relates to a poultry shackle shown in the following simplified drawings taken from appellant's brief [bracketed numerals added]:

Rectangular frame 11 is connected to flange 13 of rectangular hanger plate 2.

Counterbalance plate 16 which pivots about horizontal shaft 15 is positionally

1. U.S. Patent No. 2,612,265 (hereinafter Altenpohl, Sr.), issued September 30, 1952, to the father of appellant.

controlled by latch bar 19 which is slidably received, through slots formed in flange 13 and crossbar 20, into notch 18.

## REISSUE APPLICATION PROSECUTION HISTORY

The reissue drawings and claims as filed were identical to those of the original patent, and the reissue specification as filed was identical to the patent specification, with an additional statement that the invention "constitut[ed] an improvement over the poultry shackles of the type used on the sizing machine disclosed in U. S. Patent No. 2,612,265 [Altenpohl, Sr.]." The accompanying reissue declaration alleged that the original patent was wholly or partly inoperative or invalid by reason of a defective specification in failing to specify as background prior art the Altenpohl, Sr. reference; that the Altenpohl, Sr. reference was known to the inventor at the time the original application was filed; that, because the invention was directed to patentable improvements over the Altenpohl, Sr. reference, appellant, relying on advice of his patent solicitors, did not believe it was necessary or advisable to make it of record in the original application; that a suit[2] for infringement of the original patent was filed in the United States District Court for the Middle District of Georgia in which the defendants asserted that appellant's patent was procured through fraud for omitting the Altenpohl, Sr. reference; and that omission of the Altenpohl, Sr. reference was without any deceptive intention.

The reissue specification was amended in a preliminary amendment "to clarify certain terms and correct a minor inaccuracy." Some of the amendments included: adding the phrase, "conventionally referred to as a post," after the phrase," vertically elongated rod-like body or shank 42"; adding the sentence, "The post is an essential part of the invention as shown in Figures 2–4 in order to cooperate with the latch mechanism described hereinafter"; and adding "or post" after the phrase, "shank 42." Claim 11 was amended to provide an antecedent basis for the phrase "said support post."

Although appellant received a formal notice of allowance of the reissue application, the defendants in the infringement suit in Georgia petitioned for access and for withdrawal of the allowance. Both petitions were granted. In withdrawing the allowance, the assistant commissioner stated that "it would be inappropriate for the Patent Office to reissue the patent while the question of fraud remains undetermined by the court."

In view of the commissioner's action, the examiner rejected all claims under 35 U.S.C. § 251 because the patent was not deemed wholly or partly inoperative or invalid by reason of a defective specification as alleged. Claims 12, 14, and 16 were rejected under 35 U.S.C. § 102 as anticipated by Altenpohl, Sr., and under 35 U.S.C. § 103 as obvious over said reference. The examiner also stated that "determination as to whether there was no deceptive intention in this case will be held in abeyance pending a determination of the matter by the Court."

In response to the examiner's rejections, appellant amended his specifica-

---

2. The practice of applying for reissue of a patent involved in litigation is not new. Shull Perforating Co., Inc. v. Cavins, 94 F. 2d 357 (9th Cir. 1938); Weller Mfg. Co. v. Wen Products, Inc., 121 F.Supp. 198 (N.D. Ill.1954), aff'd, 231 F.2d 795 (7th Cir. 1956); Vernay Laboratories, Inc. v. Industrial Electronic Rubber Co., Inc., 234 F. Supp. 161 (N.D.Ohio 1964); In re Wittry, 489 F.2d 1299 (Cust. & Pat.App.1974); and International Paper Co. v. Fiberboard Corp., 181 PTCJ A-9 (D.Del.1974). The last case involved the filing, during the preliminary stages of an infringement suit, of a reissue application to cite prior art which the alleged infringer asserted was not disclosed to the Patent Office and, thus, constituted fraud on the Patent Office. No final decision had issued as of the date of this opinion.

tion to include a recitation of advantages of his invention over the Altenpohl, Sr. reference, including: a single roller compared to the double roller of Altenpohl, Sr.; minimum tilt owing to the configuration of the vertical support post in appellant's invention; a "post" compared to the "plate" of Altenpohl, Sr.; and elimination of sanitary problems present by virtue of the latch structure in Altenpohl, Sr. Appellant agreed that the issue of deceptive intent should be held in abeyance pending decision by the court. Accompanying the amendment was a supplemental reissue declaration, which was similar to the original declaration, with additional allegations that the original patent was wholly or partly inoperative or invalid because of an ambiguity in claim 11 which lacked an antecedent basis for "said support post," and that the ambiguity in claim 11 was brought to the attention of appellant's attorneys by the examiner and arose without any deceptive intent.

A few days later, appellant filed a supplemental amendment which included Patent Office classification definitions to substantiate his position that a "post" is patentably significant over the plate and rectangular frame of Altenpohl, Sr. A subsequent letter to the Patent Office included an affidavit by Ernest H. Hanhart, a consulting engineer in the mechanical arts, which stated that vertical support post "necessarily connotes to one skilled in the art a component having a vertically elongated rod-like body"; and, that the plate 2 of Altenpohl, Sr. "does not constitute a post."

The examiner repeated the rejections without any comment on the declaration concerning claim 11, the Hanhart affidavit, or the cited Patent Office classification definitions.

### THE BOARD'S OPINION

In affirming the examiner's rejection of claims 1–20 under 35 U.S.C. § 251, the board stated:

In our opinion, there is no authority to grant a reissue patent for the purpose of inserting in the specification the number of a patent which is alleged to be background art. We take the view that while the word "claim" used in Section 251, Title 35 is broad enough to include claim to the invention as well as claim to a right of priority under Section 119 of Title 35, it is unreasonable to extend it to cover a claim that a prior art patent is background art. The rationale of the court in The State of Israel, Ministry of Defense v. Edward J. Brenner, 273 Fed.Supp. 714 [155 USPQ 486 (D.D. C.1967)] is, in our opinion, inapplicable in the present case.

We find no merit to appellant's arguments relating to the ambiguity alleged in the supplemental declaration. . . .

The board affirmed the rejection of claims 12, 14, and 16 under 35 U.S.C. § 102 as anticipated by Altenpohl, Sr., rejecting appellant's principal argument that hanger plate 2 of Altenpohl, Sr. was not a "post." [3] In the board's view, the structure disclosed in Altenpohl, Sr. would fall within the ambit of the ordinary definition and usage of "post."

The board also affirmed the examiner's alternate rejection under 35 U.S.C. § 103, agreeing that if the "bifurcated lower end" of claims 14 and 16 were narrowly construed, "it would be obvious to omit the lower connecting element of frame 11" of Altenpohl, Sr.; and, regarding the latch means, that it would be obvious to relocate crossbar 20 of Altenpohl, Sr. from frame 11 to the

---

3. The board found "eminently clear" the examiner's treatment of the claimed limitations in reference to the structure of Altenpohl, Sr. As noted above with respect to claim 12, the only other limitation in controversy (other than the vertical support post) is "a latch slidably and guidingly secured to said support post for vertical movement." The examiner found latch 19 of Altenpohl, Sr. to be slidably and guidingly secured to support post 2 via flange 13 and crossbar 20. On this point, Altenpohl, Sr. states: "A vertical latch bar 19 is slidably mounted in the flange 13 of the hanger plate 2 and in an upper cross bar 20 in the hanger frame 11 to descend, under the influence of gravity, into the notch 18 and latch the counter-balance plate 16 . . . .."

hanger plate 2 above flange 13. The board rejected the statement in the Hanhart affidavit that such relocation of the crossbar 20 would render the structure inoperative because of interference, saying that since the relocated guide would be connected to the hanger plate, there would be no need to extend it beyond the sides of that plate, thereby causing interference.

## OPINION

### THE 35 U.S.C. § 251 REJECTION

The issue raised by this rejection [4] is whether appellant has presented a proper ground for reissue under 35 U.S.C. § 251.[5]

Relying on the supplemental reissue declaration, appellant argues that a proper ground for reissue lies in correction of a technical defect in claim 11 (i.e. lack of an antecedent basis). Claim 11, as originally presented in the reissue application, is identical to claim 11 of the patent:

11. The combination of claim 10 wherein said locking means is slidably and guidingly mounted upon *said support post* and has oppositely disposed locking surfaces each abuttingly engaged with one of said locking portion locking surfaces. (Emphasis supplied).

It depends indirectly from claim 7, and the record clearly shows the lack of antecedent basis for "said support post." In the preliminary amendment to the reissue specification noted above, appellant amended claim 11 "to improve its form" (by providing an antecedent basis), and the supplemental reissue declaration states that this lack of antecedent basis was originally pointed out by the examiner. Claim 11, as amended by the preliminary amendment, reads as follows (added material underscored and deleted material bracketed in accordance with Rule 173):

11. The combination of claim 10 wherein said *stationary component includes a support post, said* locking means [is] *being* slidably and guidingly mounted upon said support post and [has] *having* oppositely disposed locking surfaces each abuttingly engaged with one of said locking portion locking surfaces.

Thereafter, the examiner made no comment concerning the lack of antecedent basis in claim 11 as a ground for reissue. As noted above, the board found "no merit" in it. The solicitor argues that appellant has failed to contend that the amended claim has any different scope than the original claim; that the "post" is already included in claim 11 by implication; and, that courts construing patents [in infringement cases] should resolve ambiguities in a manner which will preserve the patent.

These arguments cannot stand. Lack of antecedent basis in a claim could render it invalid under 35 U.S.C. § 112, second paragraph, and correction of such a defect by reissue should not have to depend on difference in scope of the claim. Inasmuch as 35 U.S.C. § 251 is a remedial provision, which should be liberally construed, a patentee should be allowed to correct an error or ambiguity in a claim without having to rely on implication or

---

4. No question has been raised concerning the sufficiency of the original or supplemental reissue declarations. See Rule 175. Whether the asserted errors occurred without any deceptive intention has not been raised in this appeal.

5. This section provides:
    Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee

claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

\*    \*    \*    \*    \*

litigation. Accordingly, we hold that lack of antecedent basis in claim 11 is a proper ground for reissue under 35 U.S.C. § 251.

▌ That the error was discovered by another (in this case the examiner) does not diminish the assertion in the supplemental reissue declaration that the original patent is wholly or partly inoperative or invalid because of the ambiguity, or the assertion that the error arose without any deceptive intention. In re Richman, 424 F.2d 1388, 57 CCPA 1060 (1970).

Inasmuch as lack of antecedent basis in claim 11 provides a proper ground for reissue under 35 U.S.C. § 251, the rejection of all other claims for lack of a proper ground for reissue must also be reversed. See In re Wittry, 489 F.2d 1299 (Cust. & Pat.App.1974). Accordingly, it is unnecessary to decide whether amendment of a specification to refer to background prior art is a proper basis for reissue under 35 U.S.C. § 251.[6]

## THE 35 USC 102 REJECTION

▌ Appellant asserts error in this rejection of claims 12, 14, and 16 for two reasons: that the *shape* of the vertical support is that of a post or rod-like body; and that the slidable mounting of the latch on the vertical support post directly connects the post to the counterbalance means, to the exclusion of the bifurcated means. Concerning the vertical support post of claim 12, the board found the following definition pertinent in agreeing with the examiner

that rectangular hanger plate 2 of Altenpohl, Sr. could be considered a post [*Webster's New Collegiate Dictionary*, 1961, page 659]: "A piece of timber, metal, or the like, firmly fixed upright, esp. as a support; a pillar; prop."

Although appellant argues that his vertical support member connotes a "rodlike" body and is distinguished in its *shape* from that of Altenpohl, Sr., nowhere does he argue that the claimed vertical support "post" must be round.[7]

Appellant's argument that the above-quoted definition is unsuitable and ambiguous as applied to the vertical support post of his invention and the rectangular hanger plate of Altenpohl, Sr. because neither is "firmly fixed upright" is not responsive. The only difference, insofar as the vertical support members are concerned, between the specific embodiments of Altenpohl, Sr. and appellant's invention lies in the cross sections thereof.

Thus, the vertical support issue with respect to claim 12 is whether the rectangular hanger plate of Altenpohl, Sr., although different in cross section from the *round* post of appellant's invention, is within the scope of the *claimed* phrase "vertical support post." We agree with the board that the term "post" is used in its *ordinary sense*,[8] as, of course, is the term "plate," and also find persuasive the common purpose of the vertical support members of appellant's invention and the reference. Therefore, we conclude that the claimed phrase "vertical support post" reads on the rectangular plate 2 of Altenpohl, Sr.

---

6. The facts of this case relate to a further issue, unnecessary to decide, namely: whether a proper ground for reissue exists in amendment of a specification to refer to advantages of an invention to overcome evidentiary problems in laying a proper foundation for consideration of such advantages. See In re Davies, 475 F.2d 667 (Cust. & Pat. App.1973); Carter-Wallace, Inc. v. Otte, 474 F.2d 529 (2d Cir. 1972).

7. *Webster's Third New International Dictionary*, 1971, makes no reference to "round" in defining "rod" and mentions "a

square timber" in connection with the definition "post"; nor does the definition exclude a "plate" such as that in Altenpohl, Sr.

8. Technical dictionary definitions are not required by either Altenpohl, Sr. or Altenpohl, Jr. Moreover, the Patent Office classification definitions cited by appellant relate to different classes (Class 287 for Rod Joints or Couplings and Class 52 for Static Structures, e. g. buildings) from the one (Class 17 for Butchering) under which appellant's patent was classified.

The remaining issue with respect to claim 12 is whether the phrase, "a latch slidably and guidingly secured to said support post for vertical movement," excludes the latch mechanism of Altenpohl, Sr., which connects the counterbalance plate 16 to the rectangular plate 2 via flange 13 and crossbar 20. Appellant's argument that the latch must be secured to the support post to the *exclusion* of the frame 11 is not responsive, because claim 12 neither requires the presence of a bifurcated member nor excludes its contact with the latch. Moreover, as pointed out by the examiner, latch 19 of Altenpohl, Sr. is slidably and guidingly secured to the support post 2 by means of flange 13 and crossbar 20. The *means* of securing the latch mechanism in Altenpohl, Sr. render it no less *secured to* the plate 2 than the pair of guide rods 136 and 138 of appellant's invention. Additionally, nothing in the claim precludes attachment of the latch to other portions of the assembly.

Claim 14 specifies a "vertical support *body*" rather than a post or rod-like body, and appellant has not specifically argued any error in the finding that the phrase "vertical support body" reads on the rectangular hanger plate 2 of Altenpohl, Sr. Furthermore, appellant has conceded that the rectangular frame 11 of Altenpohl, Sr. is bifurcated.[9] Although appellant contends that the phrase "a support member pivotally mounted in said bifurcated lower end" distinguishes from Altenpohl, Sr., we find no merit therein inasmuch as the counterbalance plates of both structures are located in precisely the same position and in essentially the same manner. Because claim 14 does not preclude contact by the latch with

the bifurcated member, we further find that the phrase "a latch means releasably connecting said body and support member" reads on latch 19 connected to hanger plate 2 via flange 13.

Claim 16 merely requires that the counterbalance means be a plate, and this is clearly shown by Altenpohl, Sr.

In view of the foregoing, we hold that the board was correct in affirming the examiner's rejection of claims 12, 14, and 16 under 35 U.S.C. § 102.

## THE 35 U.S.C. § 103 REJECTION

Should there be any doubt over the propriety of the 35 U.S.C. § 102 rejection, we fully agree with the board on this alternate rejection. In considering appellant's argument that relocation, as suggested by the examiner, would cause interference, the board found the Hanhart affidavit unpersuasive, and we agree. The affidavit merely states an opinion, without support, that relocation of crossbar 20 from frame 11 to the hanger plate 2 above the flange 13 would render Altenpohl, Sr. "inoperative because of interference." Opinions of experts in affidavits *must* be given consideration and, while not controlling, generally are entitled to some weight unless they amount to an expression of an ultimate legal conclusion.[10] Here the lack of factual support for the opinion of Hanhart renders the affidavit of little probative value in overcoming this rejection. Moreover, since the relocated crossbar would be connected to the hanger plate, there would be no need to extend it beyond the sides of that plate to cause any "interference."

Appellant bases patentability upon many asserted advantages of the present

9. Whether the "vertical support body" is considered to be separate from or to include the "bifurcated lower end" is not clear from the record or appellant's arguments. We note that the rectangular frames of both appellant's invention and Altenpohl, Sr. are affixed to the lower end of a vertical support body. Therefore, whether the rectangular frame is considered the lower end or a separate member is unimportant.

Both the present invention and Altenpohl, Sr. possess rectangular structures which appellant has referred to as "bifurcated."

10. In re Brandstadter, 484 F.2d 1395 (Cust. & Pat.App.1973); In re Sebek, 465 F.2d 904, 59 CCPA 1220 (1972); In re Green, 378 F.2d 946, 54 CCPA 1463 (1967); In re Lindell, 385 F.2d 453, 55 CCPA 707 (1967).

invention, including (in addition to those recited in the amended specification) the versatility of a conveyor system containing the claimed shackle assembly to eliminate manual transfer, prevention of binding in conveyor track dips, and closer minimum spacing of the shackles for a higher production rate. These asserted advantages were not attacked below or otherwise commented upon, and, therefore, will be deemed admitted for the purposes of this appeal.[11] However, assuming the impropriety of the 35 U.S.C. § 102 rejection, the advantages would be insufficient to overcome the rejection under 35 U.S.C. § 103.[12] We find the advantages to be legally insufficient to establish nonobviousness inasmuch as they depend upon the presence of a single pulley, a round post, a latch mechanism excluding the bifurcated member, and a latch which slides externally upon the post. Because the claims do not require even one of such features, the advantages are not commensurate with the scope of the claims. In re Lindner, 457 F.2d 506, 59 CCPA 920 (1972).

The board's decision on claims 1–11, 13, 15, and 17–20 is reversed and on claims 12, 14, and 16 is affirmed.

Modified.

BALDWIN, Judge, dissenting in part, with whom LANE, Judge, joins.

I cannot agree that the subject matter of claim 12 is anticipated by or rendered obvious in view of the Altenpohl, Sr. reference.

Although I find that the broad recitation of a "vertical support body" in claims 14 and 16 reads upon the hanger plate 2 of the reference, I cannot agree that the claimed *post* of claim 12 is also anticipated by hanger *plate* 2. I agree with appellant that the term "post" connotes to one of ordinary skill in the mechanical arts a component having an elongated rod-like body, and that such a rod-like body simply does not read upon a *plate,* which in its "ordinary sense" connotes a "flat and relatively thin piece of metal or other material. Webster's Third New International Dictionary 1734 (1961).

I believe that this distinction between a post and a plate is amply supported in the record not only by the affidavit of Hanhart, but also by the Patent Office classification definitions and accompanying search notes submitted by appellant. Although the majority opinion disregards these definitions and notes because they "relate to different classes . . . from the one . . . under which appellant's patent was classified," I find them to be pertinent insofar as they do pertain to the mechanical arts. One note in particular clearly demonstrates the distinction between a post and a plate by its statement that a particular member "means any *non-rodlike body such as a plate . . . .*" (emphasis added).

Moreover, even assuming *arguendo* that a vertical post reads upon the plate of Altenpohl, Sr., I do not find the reference to disclose the claimed latch which is "slidably and guidingly secured to said support post." My examination of the reference drawings and the working model of the reference device submitted by appellant convinces me that Altenpohl, Sr. lacks this recited structure. The reference latch bar 19 is slidably and guidingly secured. However, it is so secured only to the frame 11, crossbar 20, and flange 13, not to the plate 2 which the majority considers to be the claimed post. I note that the majority in construing plate 2 as a *vertical* post, has overlooked the fact that *horizontal* flange 13 must be considered to be a member which is distinct from the claimed *vertical* post.

---

11. The solicitor has challenged some of these advantages in his brief, but we consider it too late to raise such new arguments on appeal in view of the requirements of 35 U.S.C. § 132. In re Corth, 478 F.2d 1248 (Cust. & Pat.App.1973); In re Alul, 468 F.2d 939 (Cust. & Pat.App.1972).

12. These advantages, of course, cannot avoid anticipation under 35 U.S.C. § 102. In re Wiggins, 488 F.2d 538 (Cust. & Pat.App. 1973).

Upon reviewing the rejection of claim 12 under § 103, I find that the modification of the reference proposed by the examiner, which was adopted by the board and the majority here, first assumes that plate 2 is a post and that latch bar 19 is secured thereto in the manner claimed. Based upon these assumptions, the reference was modified by relocating crossbar 20. Since I do not agree with those underlying assumptions which were made, I have examined the reference to determine whether or not it contains any teachings which would suggest to one of ordinary skill in the art that the plate 2 be changed to a post and that the latch mechanism be slidably and guidingly secured thereto. Having not found any such teachings, I can only conclude that the § 103 rejection was based upon an improper hindsight reconstruction of the prior art.

Accordingly, I would reverse the decision of the board as to claim 12.