UNION CARBIDE CORPORATION,
Appellant,

v.

AMERICAN CAN COMPANY, Appellee.

Appeal No. 83–902.

United States Court of Appeals,
Federal Circuit.

Jan. 4, 1984.

Michael O. Warnecke, Chicago, Ill., for appellant. With him on brief were Sidney Neuman, William H. Frankel and James P. Naughton, Chicago, Ill.; Thomas I. O'Brien, Danbury, Conn., and John C. Le Fever, New York City, of counsel.

Douglas W. Wyatt, New York City, for appellee. With him on brief was Thomas

A. O'Rourke, New York City; Stuart S. Bowie, Greenwich, Conn., of counsel.

Before FRIEDMAN, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

This case is an appeal from the grant of summary judgment by the United States District Court for the Northern District of Illinois, Eastern Division (Marshall, J.), entered March 4, 1983, holding United States Patent Nos. 4,262,803 ('803) and 4,277,930 ('930) invalid for obviousness under 35 U.S.C. § 103. Union Carbide appeals from that judgment, contesting the ruling of invalidity and asserting that material issues of fact remain to be tried in this case.

Our jurisdiction is found in 28 U.S.C. § 1295(a)(1).

The principal issue in this appeal is whether a genuine issue of fact has been raised with respect to the scope and content of the prior art, and, specifically, whether certain patents, which were not cited by the examiner during prosecution, were properly considered by the trial judge in determining patentability of the claimed article and method under 35 U.S.C. § 103.

We agree with the district court that appellant failed to raise a genuine issue of material fact. Further, we agree that upon consideration of the references each invention "would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103.

Accordingly, the decision of the trial court holding the '803 and '930 patents invalid must be affirmed.

## I

The subject patents are concerned with the packaging of plastic bags customarily used in the meat packing industry. In the packaging of primal cuts of beef, individual bags must be available to workers to place around each meat cut. The inventions of the patents in suit involve holding a stack of bags held together by an elongate flexible binding, such as a plastic tube, which passes through holes in the bags to form a loop. By being secured to the bottom of the stack of bags, the loop serves as a handle for carrying the bags and, upon being severed, continues to hold the stack of bags together while allowing the bags to be easily removed, one at a time. The record indicates that in other dispensing arrangements actually used in the industry, bags were supplied either in a loose stack, or in a continuous roll with perforations between them, or taped together in shingle fashion, or in dispenser boxes.

Appellant asserts that its invention solved the various problems of carrying the stack of bags, keeping the bags neatly together at the work station, separating the bags easily one at a time, and allowing the bags to be dispensed without tearing, disadvantages associated with other dispensing systems.

The inventions of the patents in suit were developed for Union Carbide, which introduced the claimed wicketed bag package to the industry in 1974. The history of the prosecution by Union Carbide of U.S. Letters Patent 4,262,803 for "a packaged article" and 4,277,930 for "a method of packaging" is detailed in Judge Marshall's opinion.[1] Suffice it here to say that an application was filed in 1974 and after three continuation applications and a divisional application (separating the claimed apparatus and method into two applications), the subject patents issued to Union Carbide in 1981.

The primary obstacle encountered in the long prosecution was simply the obviousness of the inventions. Some of the patents cited by the examiner and/or brought to his attention by Union Carbide during prosecution include:

| | |
|---|---|
| Blase (U.S. Pat. No. 3,472,388) | – bracket for wicket mounting plastic bags. |
| Chamberlin (U.S. Pat. No. 3,261,006) | – flexible loop fastened through desk note pads or other paper sheets. |
| Altman, Jr. (U.S. Pat. No. 3,338,398) | – plastic bags held together by paper band and bent wire. |
| Davis, Jr., et al. (U.S. Pat. No. 3,184,055) | – assembly of bags held in place by U-shaped wicket. |
| Million (U.S. Pat. No. 3,312,339) | – stacked bags held together by a metal wicket. |

1. Reported at 558 F.Supp. 1154, 218 USPQ 938 (N.D.Ill.1983).

Williamson et al.
(U.S. Pat. No. 2,925,175) — cardboard carton with tray for dispensing plastic garment bags.

Tarnoff
(U.S. Pat. No. 3,211,293) — display rack with brackets extending to support a stack of articles for sale.

Dinges
(U.S. Pat. No. 3,454,166) — wall mounted bag holder/dispenser with rigid wicket element holding an array of bags.

Cwikla
(U.S. Pat. No. 3,738,482) — stack of flexible plastic packaging bags held together in imbricated fashion by stiff wire wicket.

Kupcikevicius
(U.S. Pat. No. 3,770,134) — rigid wicket on which bags are mounted and held in a stacked array.

Stebbings (cited only in '930 patent)
(U.S. Pat. No. 858,115) — a "file-loop" for papers, i.e., an openable resilient loop on which papers may be placed and removed.

Barnett
(U.S. Pat. No. 3,406,818) — wicket element holding stack of bags in registered array.

Rejections for obviousness were repeatedly given but eventually claims were allowed, the broadest of which in each patent is the following:

## '803 Patent

1. A package article comprising, in combination:

a) a stack of flattened flexible packaging sheets, each sheet having two wicket holes therethrough, said wicket holes being in substantial registration with the wicket holes in respectively contiguous sheets in the stack;

b) an elongate flexible binding member extending through the wicket holes in the stacked sheets to form a hand grippable loop between the wicket holes of the topmost sheet of the stack, said loop being severable, and, when severed, _forming upwardly extending free-ended flexible wicket elements_ holding said sheets in readiness for one at a time removal, and a shank extending from each of the wicket holes in the bottommost sheet of the stack; and

c) means on each said shank to retain the sheets on the binding member prior to the severing of said flexible binding member hand grippable loop. [Emphasis added.]

## '930 Patent

1. In a continuous process for the successive packaging of individual articles in a series of articles delivered sequentially to a packaging station, the improvement comprising the steps of:

a) providing a stack of flattened flexible packaging sheets held assembled on an elongate flexible binding member extending through registered wicket holes in said sheets, said member defining a hand grippable severable loop between the wicket holes of the topmost sheet of said stack and a shank extending from each wicket hole in the bottommost sheet of the stack;

b) mounting the stack of sheets on a sheet dispensing wicket base means arranged and disposed to secure the shank portion of the flexible binding member;

c) severing the flexible binding member at a point on the hand grippable loop and thereby _forming upwardly extending free-ended flexible wicket elements_ holding said sheets in readiness for one at a time removal; and

d) removing the packaging sheets from the stack over said severed ends of the severed loop of the flexible binding member without tearing said sheets. [Emphasis added.]

After the underlined limitations were added, the examiner allowed the claims, stating that the claims were allowable "solely" based on that limitation. The patents issued in April and July of 1981.

In August 1982 Union Carbide brought suit against American Can Company charging infringement by American Can's making and selling an infringing bag package article and contributing to the infringement of its method patent. After some preliminary discovery, American Can moved for summary judgment, asserting the invalidity of Union Carbide's patents under 35 U.S.C. § 103, that is, for obviousness, in view of the art brought to the attention of the court. Union Carbide responded, _inter alia,_ with an affidavit of Don A. Fischer, an engineer, former patent attorney, and frequent expert witness in patent cases, who expressed his opinion that a person skilled in the packaging art would not have looked

to certain of the patents relied on by American Can in its motion to solve "the problem of dispensing slipperly [sic] flexible packaging bags" because the references were concerned with "displaying and retaining" and not "dispensing." To the extent that the uncited patents were relevant, Fischer stated that they were at best cumulative to the art considered by the Patent Office. In any event, Fischer gave his opinion that the inventions of the patents in suit would not have been obvious from the references.

The patented apparatus and method are illustrated by the drawings shown below:

Rejecting the sufficiency of the affidavit to raise an issue of fact as well as Union Carbide's argument that the references were from a non-analogous field, the court considered the art to which objection was made, together with the art cited by the examiner, the history of prosecution of the patents, and additional affidavits submitted by Union Carbide to show long-felt need for the invention and its commercial success. The court stated that the inventions would

have been obvious in the following summation:

> The 803 device added nothing of consequence to the Million patent, and what it did add, severability of the binding member, was an obvious modification, based upon the Chamberlin ['950],[2] Sutcliffe, Aikin, and Stebbings patents. The carrying loop was not a feature upon which the Patent Office granted the application, and even if it had been, it was rendered obvious by Roberts and Hunt.

## II

This court in *Chore-Time Equipment, Inc. v. Cumberland Corp.,* 713 F.2d 774, 218 USPQ 673 (Fed.Cir.1983), confirmed that the statutory purposes of the grant of summary judgment under Fed.R.Civ.P. 56[3] are without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard. As stated therein:

> Many, if not most, suits for patent infringement give rise to numerous and complex fact issues, rendering those suits inappropriate for summary disposition. Where no issue of material fact is present, however, courts should not hesitate to avoid an unnecessary trial by proceeding under Fed.R.Civ.P. 56 without regard to the particular type of suit involved.

Further, the court held:

> The mere incantation of the fact findings listed in *Graham* cannot establish the impropriety of issuing a summary judgment when there is no material issue of fact requiring a trial to resolve, and the facts of record require a holding of patent invalidity.

*Id.* at 778–79, 218 USPQ at 675.

In this appeal, Union Carbide asserts that material questions of fact with respect to each of the factual inquiries delineated in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), are present, challenging the trial court's holding that Union Carbide failed to raise any factual issue requiring further development at trial.

■ In accordance with *Chore-Time,* it is incumbent on the trial judge to look beyond mere denials or arguments with respect to the issues of scope and content of the prior art, differences between the prior art and the invention in suit, level of skill in the art, or other factual issues. On the other hand, the court must resolve all doubt respecting the presence or absence of factual issues in favor of the one against whom summary judgment is sought. Judge Marshall followed these tenets without fault.

## III

■ With respect to the *Graham v. John Deere* inquiries, the principal attack by Union Carbide is that an issue of fact was raised by the Fischer affidavit concerning the scope and content of the prior art. If this position were correct, the trial court's determination of obviousness under § 103, which is dependent on the teaching of certain patent references said by Fischer to come from non-analogous arts, would fail.

In particular, the trial court relied upon Million, Roberts and Hunt, admittedly prior art, and Chamberlin '950, Sutcliffe, Aikin and Stebbins, each of the latter being asserted in the Fischer affidavit to be improper references had the trial court properly defined the scope of the art. In Fischer's opinion, Chamberlin is non-analogous, being directed to retaining paper sheets, not dispensing them. Similarly, Sutcliffe, Aikin, and Stebbins would not, in his opinion, have been considered inasmuch as they relate to various ways of displaying and filing, not transporting or dispensing. This led to his conclusion that a person "skilled in the packaging art would not look to the bill

---

2. The Chamberlin patent referred to here, U.S. Patent No. 3,822,950 is different from Chamberlin, U.S. Patent No. 3,261,066, which the examiner did cite.

3. Rule 56(c) provides in pertinent part:

> [J]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

filing and fastening arts to solve the problems of dispensing slipperly [sic] flexible packaging bags."

Appellant is correct that the district court gave little weight to the Fischer affidavit. The court first noted that Fischer's background and training, apart from preparation to be a witness in this litigation, gave him no "expertise as to the scope of the field of endeavor of the inventions of the patents in suit or as to what other fields are analogous art", citing *In re Deters,* 515 F.2d 1152, 1155, 185 USPQ 644, 647 (CCPA 1975), and *In re Altenpohl,* 500 F.2d 1151, 1158, 183 USPQ 38, 44 (CCPA 1974), as authority for discounting the testimony of one who fails to show skill in the relevant art or whose opinion is without factual support. Union Carbide does not assert that the trial court misunderstood Fischer's background, which, in any event, is set out in his affidavit and was accepted by the court as correct.

Secondly, the court rejected the substance of Union Carbide's position that only art relating to "dispensing of flexible bags and bagging means" was analogous as an "amazingly restrictive characterization" of the prior art. The court looked to the problem addressed by the inventor, as stated by him in his patent application and as indicated by the prosecution history, to establish the scope and content of the art, noting that the examiner (and it must be noted by us, also the applicant) cited Chamberlin '066 for a flexible loop paper fastener, and Tarnoff for a display rack, as pertinent art. The problems of the inventor here, the court noted, included binding and carrying the bags as well as dispensing them.

Appellant does not dispute that a basis for determining whether art is analogous under the standards of the Court of Customs and Patent Appeals is to look at whether it deals with a problem similar to that being addressed by the inventor. Indeed, the trial court relied on the following analysis from *In re Wood,* 599 F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979), *quoted in In re Pagliaro,* 657 F.2d 1219, 1224, 210 USPQ 888, 892 (CCPA 1981):

In resolving the question of obviousness under 35 U.S.C. § 103, we presume full knowledge by the inventor of all the prior art in the field of his endeavor. However, with regard to prior art outside the field of his endeavor, we only presume knowledge from those arts reasonably pertinent to the particular problem with which the inventor was involved. The rationale behind this rule precluding rejections based on combination of teachings from references from non-analogous arts is the realization that an inventor could not possibly be aware of every teaching in every art. Thus, we attempt to more closely approximate the reality of the circumstances surrounding the making of an invention by only presuming knowledge by the inventor of prior art in the field of his endeavor and in analogous arts.

The determination that a reference is from a nonanalogous art is therefore twofold. First, we decide if the reference is within the field of the inventor's endeavor. If it is not, we proceed to determine whether the reference is reasonably pertinent to the particular problem with which the inventor was involved. [Citation omitted.]

To the same effect are *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1535, 218 USPQ 871, 876 (Fed.Cir.1983), *In re Mlot-Fijalkowski,* 676 F.2d 666, 670, 213 USPQ 713, 716 (CCPA 1982), and *Republic Industries v. Schlage Lock Co.,* 592 F.2d 963, 975, 200 USPQ 769, 781 (7th Cir.1979).

With the problems clearly defined by the inventor, we see no basis to hold that the district court erred in determining the scope and content of the prior art. Contrary to Union Carbide's view, the Fischer affidavit expressed no more than an unsupported conclusory opinion which ignored, rather than conflicted with, the evidence of record. Thus, no genuine issue of material fact was raised by appellant on the scope and content of the prior art and the district court correctly considered the art submitted by American Can in resolving the issue of obviousness.

## IV

The assertion by Union Carbide that the differences in the prior art and the invention are disputed, as well as the question of level of skill in the art, need little comment.

█ As to the first, the references and appellant's invention are easily understandable without the need for expert explanatory testimony. However, Union Carbide did give the district court the benefit of such analysis through Fischer. Union Carbide points to no error in the court's delineation of the disclosures in any reference nor any conflict with Fischer's explanation. Rather, Union Carbide simply disputes that as a legal matter the court can make factual determinations of the issue of differences without an analysis *by appellee.* We see no need for the latter. On the motion for summary judgment, the court would, in any event, have had to resolve doubts in appellant's favor. Here, the court looked at the readily understandable references, and we, like the trial court, discern no genuine issue on the question of what the references show. A trial on this issue would undoubtedly produce more argument but no more enlightenment.

The basic flaw in Union Carbide's position is in equating the second factual inquiry of *Graham* with the ultimate legal issue of obviousness. That is the essence of its argument for reversal of the judgment, a matter we will turn to shortly.

█ Finally, the trial court is faulted for failure to make a specific finding on level of skill in the art. Appellant objects to resolving the matter at the level of skill of a layman, although this is, except in rare circumstances not shown here, the most favorable view for the patent owner. Contrary to appellant's arguments, we do not find this case distinguishable from *Chore-Time Equipment, Inc. v. Cumberland Corp., supra,* where this court stated:

> That is not to say that simplicity of the invention, or its ready understandability by a judge, constitute evidence of obviousness. We hold only that an invention may be held to have been either obvious (or nonobvious) without a specific finding of a particular level of skill or the recep-

tion of expert testimony on the level of skill where, as here, the prior art itself reflects an appropriate level and a need for such expert testimony has not been shown.

> Though Judge Wilson noted that obvious-to-the-court was not the appropriate measure, he postulated a level of skill as that of the "ordinary layman of average intelligence." Though Chore-Time disputes that that level was most favorable to it, saying "a layman would [not] recognize that birds roosting on feeders, or birds climbing into feeder pan, would be problems in need of solutions," it has not shown that a higher level could affect the result. We need not determine the appropriateness of the postulated level in this case.

713 F.2d at 779, 218 USPQ at 676.

## V

█ Appellant's challenge to the lower court's holding that the patent is invalid for obviousness under 35 U.S.C. § 103 points to purported errors in the district court's analysis. However, since this court reviews the issue of obviousness as one of law on which it must exercise independent judgment, the court must be convinced not only that the decision maker engaged in a faulty analysis in applying the law to the facts, but also that a correct application of the law to those facts would bring a different result. Appellant has wholly failed to convince us that under the § 103 standard as interpreted by this court, a different result would follow on the issue of obviousness.

Thus, if the district court failed to properly place the burden of proof, this court will do so. If the district court improperly focused on a particular feature, this court will consider the invention as a whole. If the district court "wholly disregarded submitted evidence of 'secondary considerations' supporting patentability," the evidence will become part of our equation, and on a motion for summary judgment, will be construed most favorably to the non-movant. If the district court required synergistic results in a combination, we cannot reverse unless, under the § 103 standard, the result, as opposed to the reasoning, is erro-

neous as a matter of law. This is the thrust of the opinions of the Federal Circuit in *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d at 1540, 218 USPQ at 800; *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580, 219 USPQ 8, 12 (Fed.Cir.1983); *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d at 781, 281 USPQ at 677; *Aktiebolaget Karlstads Mekaniska Werkstad v. USITC.*, 705 F.2d 1565, 1575, 217 USPQ 865, 872 (Fed.Cir.1983). This is not to say that reasoning is to be ignored since faulty reasoning is likely to lead to a wrong result. Nevertheless, appellant must not only show error in reasoning, but error in result.[4]

## VI

With respect to the ultimate legal conclusion or result, Union Carbide argues that the '803 patent claims present a "*new and unobvious* combination including an elongate flexible binding member which serves both as a handle and, when severed, a highly functional dispensing means. This new and different function is neither shown nor suggested in the prior art."

The district court considered the Million patent (shown below) to be the most pertinent prior art reference cited by the examiner and, accordingly, used Million as its primary reference.[5] The district court noted that Million "used a wicket type fastener to hold the bags together" and that "with the exception of the lack of a hand-grippable loop, the diagram of this part of Million appears identical to the '803 patent." The fasteners and general shape of the wicket in Million supports the court's view.

MILLION U.S. PATENT NO. 3.311,399

FLEXIBLE BAGS AND BAGGING MEANS

The court further noted that Million did not disclose severability of the binding member, requiring instead that the bags be torn for removal. Focusing on that fea-

---

4. While holding for appellee, Judge Marshall rejected much of the argument of appellee and relied only upon precedent of the Supreme Court and this court. We too reject many of the views set forth in appellee's brief and trust that counsel will cease holding up the specter of a patent as a "17 year monopoly", and will find it unnecessary to speak of the Constitutional rather than the statutory standard of patentability, synergistic results, weakened presumptions of validity, or any other cliche which this court has rejected.

5. In this case there appear to be several other references, not discussed herein, which would have served equally, if not better, as the primary reference.

ture, the district court found that the Chamberlin '950, Sutcliffe, Aikin, and Stebbings patents each employed a "binding member that may be separated in the middle to allow for removal of the items bound."

Appellant asserts that the Million wicket is not an "elongate flexible binding member" and that Million does not disclose a loop which "when severed, [forms] upwardly extending free-ended flexible wicket elements holding said sheets in readiness for one at a time removal."

However, the Chamberlin reference (shown below) teaches that which Million lacks.

### CHAMBERLIN U.S. PATENT No. 3,822,950
### FILE FOLDER PAPER FASTENER

Chamberlin discloses a holder with two coil springs anchored to a back leaf and joined on top to hold a stack of "regular paper, *plastic* sheets, cardboard or the like." (Emphasis added.)

The coil springs of Chamberlin satisfy appellant's demand for a teaching of an "elongate flexible binding member" which, when severed, forms "upwardly extending free-ended wickets," as shown by the drawings above. Moreover, contrary to appellant's argument that Chamberlin's only function is to "retain . . . paper sheets together," Chamberlin specifically sets forth that its fastener is designed to "facilitat[e] the removal and/or addition of sheets from the bound stack."

Appellant's argument that Chamberlin "has nothing to do with the transporting, handling and dispensing of heavy plastic bags" is misplaced since, as we have already concluded, Chamberlin is within the scope of the relevant prior art.

■ Turning now to the conclusion of obviousness, we consider whether the claimed subject matter *as a whole* would have been obvious to one of ordinary skill in the art at the time the invention was made. We must determine, in other words, whether it would have been obvious to make the *combination.* According to appellant, the invention is

the first time a hand grippable stack of bags has been provided where the gripping and holding element of the stack as it is being transported and put into place at a packaging station, also provides, when severed in the hand grippable loop portion thereof, the holding and mounting wickets for the actual packaging operation which requires a one-at-a-time removal of the bags.

Appellant may very well be correct in stating that the subject invention was the first time these features were combined. However, the combination itself, however novel, must still pass the test of § 103.

The starting place for determining the issue of obviousness is, as in *In re Winslow,* 365 F.2d 1017, 1020, 151 USPQ 48, 51 (CCPA 1966) cited by the district court, with "the inventor working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him." [6] No other evidence was in the *Winslow* case, and nothing more in the way of evidence was there to be considered in determining obviousness. Here, however, our inquiry cannot merely stop with "the prior art . . . on the wall." Only after consideration of all evidence, including that with respect to "secondary considerations," can obviousness be judged. *Stevenson v. International Trade Commission,* 612 F.2d 546, 553, 204 USPQ 276, 282 (CCPA 1979). As the trial court itself noted: "[C]onsideration of this factor helps us to guard against slipping into hindsight rather than viewing the question as the inventor at the time the patented device was developed."

In its memorandum opposing summary judgment, Union Carbide submitted three affidavits (the "Bailie", "Arnstad", and "Ostrowsky" affidavits). The Arnstad and Ostrowsky affidavits note the problems associated with prior bag dispensing systems, and the solution of these problems by the present inventions. The Bailie affidavit presented "persuasive evidence," according to the district court, that Union Carbide's "wicketed Perflex 62 bags" have, since their introduction in 1974, captured a significant share of the market for fresh red meat bags. American Can presents no challenge to these claims, avoiding thereby the creation of a disputed fact. The affidavits, thus, are accepted for what they show.

The Arnstad affidavit expressed the advantages of Union Carbide's wicketed bags in his meat packaging operations over rolled bags, bags taped together, and bags placed in a plastic wrap bound by a rubber band. Ostrowsky added that Union Carbide's wicketed bags had advantages over loose bags and bags in what he called "kleenex-type [sic]" dispensers.

Neither expressed a long felt need. For example, Ostrowsky, *inter alia,* described the change in packaging from heat sealed to vacuum packaging in 1980 which led him to the Union Carbide product.

Nor is it shown that Union Carbide's products supplanted a prior art device upon which the conclusion of obviousness is based, which would be particularly persuasive of nonobviousness.

■ From the totality of the evidence and the arguments of the parties, we conclude that the claims do not meet the test of § 103. Accordingly, the '830 patent is invalid.

## VII

■ Finally, we must address Union Carbide's argument that the '930 method patent was given insufficient consideration by the district court. Union Carbide objects to the following footnote in the district court opinion:

> [13] What we have said about the 803 patent applies equally to the 930 method patent. The 930 method is based entirely upon the use of the 803 device, which, we have held, is not patentable. We do not see how a method based entirely upon the use of an unpatentable device can itself be patentable.

Appellant contends that the court's reasoning that it does not "see how a method based entirely upon the use of an unpatentable device can itself be patentable," is in direct conflict with controlling law, citing *Diamond v. Diehr,* 450 U.S. 175, 183, 101 S.Ct. 1048, 1055, 67 L.Ed.2d 155, 209 USPQ 1, 6 (CCPA 1981). Appellant asserts it was improper for the district court to invalidate the '930 method patent without considering any prior art relating to a method of successive packaging of articles.

Without question, the court appears to have spoken too broadly except in the context of this case. *See, In re Tarczy-Hor-*

---

**6.** See the modification of *Winslow,* by the court which decided it, in *In re Antle,* 444 F.2d 1168, 170 USPQ 285 (CCPA 1971), where it was pointed out that the prior art on the wall con-

sists only of those patents one of ordinary skill in the art would have selected without the advantage of hindsight or knowledge of the invention.

*noch,* 397 F.2d 856, 867, 158 USPQ 141, 149–50 (CCPA 1968) (method patentable despite unpatentability of device used therein). However, in the instant case, the claimed apparatus and method are so interrelated that a separate analysis under *Graham* would have merely been superfluous and, moreover, is not required under Fed.R.Civ.P. 52. The same prior art would have been analogous, and the differences between the prior art and the claimed invention would have been essentially identical. Hence, the district court's statement, "[w]hat we have said about the 803 patent applies equally to the 903 method patent," is sufficient in this case.

## VIII

No error in the district court's grant of summary judgment having been shown, we *affirm.*

AFFIRMED.