NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**B.E. TECHNOLOGY, L.L.C.,**
*Appellant*

**v.**

**GOOGLE, INC., MATCH.COM LLC, PEOPLE MEDIA, INC.,**
*Appellees*

---

2015-1827

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2014-00038, IPR2014-00699.

-------------------------------------------------------------------------

**B.E. TECHNOLOGY, L.L.C.,**
*Appellant*

**v.**

**MICROSOFT CORPORATION, GOOGLE, INC.,**
*Appellees*

---

2015-1828

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2014-00039, IPR2014-00738.

------------------------------------------------------------------------

**B.E. TECHNOLOGY, L.L.C.,**
*Appellant*

**v.**

**FACEBOOK, INC., GOOGLE, INC., MATCH.COM LLC, PEOPLE MEDIA, INC.,**
*Appellees*

_____

2015-1829, 2015-1879

_____

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2014-00052, IPR2014-00053, IPR2014-00698, IPR2014-00743, IPR2014-00744.

_____

Decided: November 17, 2016

_____

ROBERT E. FREITAS, JASON S. ANGELL, Freitas Angell & Weinberg LLP, Redwood City, CA, argued for appellant. Also represented by DANIEL J. WEINBERG.

ANDREW JOHN PINCUS, Mayer Brown LLP, Washington, DC, argued for all appellees as to 15-1827. Google, Inc. also represented by BRIAN ROSENTHAL, PAUL WHITFIELD HUGHES, CLINTON BRANNON.

MICHAEL SUMNER. FORMAN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor Michelle K. Lee as to 15-1827. Also represented by THOMAS W. KRAUSE, SCOTT WEIDENFELLER, KAKOLI CAPRIHAN.

JEFFREY PAUL KUSHAN, Sidley Austin LLP, Washington, DC, argued for all appellees as to 15-1828. Microsoft Corporation also represented by SCOTT BORDER, SAMUEL DILLON, RYAN C. MORRIS, ANNA MAYERGOYZ WEINBERG.

HEIDI LYN KEEFE, Cooley LLP, Palo Alto, CA, argued for all appellees as to 15-1829, 15-1879. Facebook, Inc., also represented by MARK R. WEINSTEIN; ORION ARMON, PETER SAUER, Broomfield, CO.

JASON ALEXANDER ENGEL, K&L Gates LLP, Chicago, IL, for appellees Match.com LLC, People Media, Inc. Also represented by KACY DICKE.

––––––––––––––

Before LOURIE, CHEN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

B.E. Technology, L.L.C. (B.E.) appeals from three final written decisions of the U.S. Patent and Trademark Office, Patent Trial and Appeal Board (Board), across nine *inter partes* reviews (IPRs), in which the Board found unpatentable claims 11–22 of B.E.'s U.S. Patent No. 6,628,314. *See Google, Inc. v. B.E. Tech., LLC*, Nos. IPR2014-00038, IPR2014-0069, 2015 WL 1735099, at *1 (P.T.A.B. Mar. 31, 2015) (*Google Written Decision*); *Microsoft Corp. v. B.E. Tech., LLC*, Nos. IPR2014-00039, IPR2014-00738, 2015 WL 1735100, at *1 (P.T.A.B. Mar. 31, 2015) (*Microsoft Written Decision*); *Facebook, Inc. v. B.E. Tech., LLC*, Nos. IPR2014-00052; IPR2014-00053, IPR2014-00698, IPR2014-00743, IPR2014-00744, 2015 WL 1735098, at *2 (P.T.A.B. Mar. 31, 2015) (*Facebook*

*Written Decision*).  Because the above-captioned appeals all address overlapping claims of the '314 patent, we address them in a single opinion, and we affirm, for the reasons stated herein.[1]  We agree with the Board that claims 11–22 of the '314 patent are unpatentable based on anticipation by U.S. Patent No. 6,119,098 (Guyot) and obviousness in view of Guyot, U.S. Patent No. 5,918,014 (Robinson), and *How to Use Anonymous FTP, IAFA Working Group, 1–13 (May 1994)* (RFC 1635).  *Microsoft Written Decision* at *4–14.  We also affirm the Board's denial of B.E.'s contingent motion to amend.  *Id.* at *16–17.  Because we affirm based on Microsoft's petition, we do not address the merits of Google's and Facebook's parallel petitions and dismiss them as moot.[2]

## BACKGROUND

The '314 patent relates to user interfaces that provide advertising over a global computer network such as the Internet.  *See* '314 patent col. 1, ll. 12–16.  It describes a client software application comprising a graphical user interface (GUI) and an advertising and data management

---

[1]    We recently issued a separate opinion addressing similar appeals from four final written decisions of the Board finding all three claims of B.E.'s U.S. Patent No. 6,771,290 unpatentable as anticipated.  *B.E. Tech., L.L.C. v. Sony Mobile Commc'ns (USA) Inc.*, Nos. 2015-1882, 2015-1883, 2015-1884, 2015-1887, 2015-1888, 2016 WL 4255008, at *1 (Fed. Cir. Aug. 12, 2016).  We addressed the appeals concerning the '290 patent separately because they did not involve claims directed to targeted advertising over a global computer network (as in this case), but to a computer program that allows remote access to data stored on a server via a user's personal computer.  *See id.*

[2]    Unless otherwise indicated, all citations to the record and the parties' briefs refer to the documents filed in B.E.'s appeal from the *Microsoft Written Decision*.

(ADM) module. *Id.* col. 6, ll. 64–67. The GUI comprises a first region comprising a number of user-selectable items and a second region comprising an information display region, which includes banner advertisements. *Id.* col. 4, ll. 24–37. To target a user with advertisements, program modules in the GUI collect statistical data based on the user's activity within the GUI. *Id.* col. 4, ll. 43–51.

When a user first accesses the client software application, the user enters demographic information into a form, which is used in selecting advertising to be displayed to the user. *Id.* col. 8, ll. 57–62, col. 16, l. 60 – col. 17, l. 2. The ADM server checks the form's completeness, assigns a unique identification (ID) to the user, and stores the unique ID with the user's demographic information. *Id.* col. 6, l. 67, col. 16, l. 60 – col.17, l. 15. The user's computer downloads the client software application, which then monitors and reports to the ADM server the user's activity, and displays advertising banners to the user based on the user's input or activity at periodically timed intervals. *Id.* col. 12, ll. 55–59, col. 14, ll. 40–46, col. 17, ll. 17–23.

## I. Representative Claim

Claim 11 is representative and is reproduced below:

11. A *method of providing demographically-targeted advertising to a computer user*, comprising the steps of:

providing a server that is accessible via a computer network,

permitting a computer user to access said server via said computer network,

acquiring *demographic information* about the user, said demographic information including information specifically provided by the user in response to a request for said demographic information,

providing the user with download access to computer software that, when run on a computer, displays advertising content, records computer usage information concerning the user's utilization of the computer, and periodically requests additional advertising content,

*transferring a copy of said software to the computer in response to a download request by the user*,

providing a *unique identifier* to the computer, wherein said *identifier uniquely identifies information sent over said computer network from the computer to said server*,

associating said unique identifier with demographic information in a database,

selecting advertising content for transfer to the computer in accordance with the demographic information associated with said unique identifier;

transferring said advertising content from said server to the computer for display by said program,

periodically acquiring said unique identifier and said computer usage information recorded by said software from the computer via said computer network, and

associating said computer usage information with said demographic information using said unique identifier.

*Id.* col. 22, l. 41 – col. 23, l. 7 (emphases added). Although numerous petitioners, including Google, Inc., Microsoft Corp., and Facebook, Inc. filed separate IPR petitions against various claims of the '314 patent, we agree with Microsoft that all of the challenged claims are unpatentable based on anticipation by Guyot and obviousness in view of Guyot, Robinson, and RFC 1635. *Microsoft Writ-*

*ten Decision*, at *1. We briefly review Guyot, Robinson, and RFC 1635, before discussing claim construction, anticipation, obviousness, and B.E.'s contingent motion to amend.

## II. Guyot

Guyot describes a system and method for targeting and distributing advertisements over a distributed information network that allows information to be exchanged between a server and multiple subscriber systems. *Id.* at *6. The server stores and manages an advertisement database, and each subscriber system has a unique proprietary identifier. *Id.* at *6–7. The subscriber systems periodically access the server to download targeted advertisements based on the server-stored personal profile, before displaying the targeted advertisements to the subscriber. *Id.* at *6. The subscriber can select a "connection button" to connect to the server, which determines if the latest software version is needed, and if yes, a uniform resource locator (URL) is provided to the subscriber computer, which downloads the software. *Id.* at *10.

## III. Robinson

Robinson describes a system for displaying advertising to users using a cookie stored on the user's computer. *Id.* at *11. "The cookie contains the identifier of the user, and the user ID in a central database is updated with tracking information from the cookie," which allows the central server to associate information with a user. *Id.*

## IV. RFC 1635

RFC 1635 describes File Transfer Protocol (FTP), a protocol on the Internet for transferring files from one computer host to another. *Id.* at *12. The user of the FTP program logs into both hosts with a user account and a password. *Id.* RFC 1635 also describes anonymous FTP, in which an archive site acts as a repository for a wealth of information, akin to a library. *Id.* To provide general

access, a special user account called "anonymous" allows the user to log in using FTP to view and retrieve a limited set of files from the archive site. *Id.*

DISCUSSION

I. Standard of Review

"We review intrinsic evidence and the ultimate construction of the claim de novo." *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015). In construing claims, the Board applies the broadest reasonable interpretation. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016). Anticipation is a question of fact. *Eli Lilly & Co. v. Bd. of Regents of Univ. of Wash.*, 334 F.3d 1264, 1267 (Fed. Cir. 2003). "[O]bviousness under § 103 is a question of law based on underlying factual findings." *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1334 (Fed. Cir. 2016). "We review the Board's conclusions of law de novo and its findings of fact for substantial evidence." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1337 (Fed. Cir. 2016). Substantial evidence is "such relevant evidence [that] a reasonable mind might accept as adequate." *Id.*

II. Claim Construction

We begin with claim construction. B.E. appeals the Board's constructions of three claim limitations: "demographic information," "unique identifier," and "transferring a copy of said software to the computer in response to a download request by the user." We find no error in these constructions, and we address each, in turn.

The Board first adopted the parties' agreed-upon construction of "demographic information" as "collected characteristic information about a user that does not identify the user." *Microsoft Written Decision*, at *4. Yet B.E. now appears to seek a different construction by arguing that the agreed-upon construction of "demographic information" must exclude "computer usage infor-

mation." B.E. asserts that claim 11 recites that the demographic information is obtained from the user via a request for that information, whereas computer usage information is collected from the user's computer activity. B.E., however, did not argue this position to the Board or object to the Board's construction. *Id.* The Board found that demographic information need not be solely information specifically requested from the user nor exclude Internet browsing history because demographic information means "collected information about a subscriber, such as Internet sites accessed, and this information does not identify the subscriber." *Id.* Even though demographic information includes data specifically requested from a user, that does not mean that demographic information necessarily excludes computer usage information, as reflected in the broad, agreed-upon claim construction. We affirm.

The Board next construed "providing a unique identifier to the computer" and the "identifier uniquely identifies information sent over said computer network from the computer to the server" to mean "any system, process, or entity provides a unique identifier to the computer, where the unique identifier identifies any information that is sent over the computer network." *Id.* at *11. B.E. argues that (1) the unique identifier must be unique to the "computer," and (2) the server must "provide" the unique identifier to the computer. Claim 11, in pertinent part, reads:

> [P]roviding a *unique identifier* to the *computer*, wherein said *identifier uniquely identifies information* sent over said computer network from the computer to said server,

'314 patent, col. 22, ll. 58–62 (emphases added).

We affirm because B.E.'s proposed construction of unique identifier does not comport with the disclosure of the '314 patent, which describes collecting demographic

information from a user, and there is no requirement that the server provide the unique identifier. B.E. agrees that "[c]laim 11 does not require, or inevitably forbid, that the unique identifier identify a user." Appellant Br. at 25–26, Appeal No. 2015-1827.[3] But, B.E. argues that the remainder of the claim phrase, "said identifier uniquely identifies information sent . . . from the computer," requires the unique identifier to identify the computer. *Id.* According to B.E., whether the unique identifier identifies the user is immaterial, because the unique identifier "tolerates a user identifier if, but only if, the identifier 'uniquely identifies information sent . . . from the computer.'" *Id.*

We disagree. B.E. does not appreciate that the remainder of claim 11 establishes that the unique identifier is associated with "demographic information" that is "specifically provided by the user in response to a request for said demographic information." '314 patent, col. 22, ll. 48–51, 58–64. B.E. does not point to any exclusionary language in the '314 patent's claims or specification that a unique identifier cannot be solely a user ID. To the contrary, dependent claim 16 expressly recites "associat[ing] a different unique identifier with each of a number of valid users of said software." '314 patent, col. 23, ll. 24–25. The '314 patent specification also confirms that the unique identifier could be a "user" ID because "[t]he user ID . . . is used to anonymously identify the user for the purpose of demographically targeting advertising to that user." '314 patent, col. 17, ll. 29–31. This is achieved by "assign[ing] a unique ID to the user and then stor[ing] that ID along with the received demographic data." *Id.* col. 17, ll. 13–14. B.E. alternatively argues that the

_____

[3] This opinion refers to the documents filed in B.E.'s appeal from the *Google Written Decision* using the designation "Appellant Br. at __, Appeal No. 2015-1827."

specification explains that "server 22 assigns" the "unique ID," *id.* col. 17, l. 13, and the client "receives an assigned ID from the server," *id.* col. 18, l. 14, but nothing in the claims requires that the unique identifier be assigned by the server. Claim 11, for example, expressly recites "*transferring* said advertising content *from said server to the computer*," whereas the unique identifier is just "provid[ed] . . . to the computer." We agree that claim 11 does not preclude the unique identifier from being provided by "any system, process, or entity," and we affirm the Board's construction of unique identifier.

The Board construed "transferring a copy of said software to the computer in response to a download request by the user" to mean "sending a request for downloading data from a user's computer to the server." *Id.* at *5. It rejected B.E.'s position that the claims have an "intent" requirement in the sense that "a user knowingly asks for a copy of software to be downloaded from a server to the user's computer." *Id.* at *5, 10. The Board found that the claims do not require a user to "knowingly" ask for a copy of software, and the broadest reasonable interpretation of "download request by the user" is "sending a request from the user's computer to a server." *Id.* We agree with the Board because the claims do not require that a user "knowingly" download the software. The claims require only that the user download the software, which means sending a request from the user's computer to the server. We agree with the Board's construction of this limitation to mean "sending a request for downloading data from a user's computer to the server." *Id.* at *5.

III. Anticipation of Claims 11–14 and 16–19 by Guyot

B.E. argued to the Board that Guyot did not disclose three limitations of claims 11–14 and 16–19: (1) a "method of providing demographically-targeted advertising to a computer user"; (2) "providing a unique identifier to the

computer"; and (3) "transferring a copy of the software 'in response to a download request by the user.'" *Id.* at *7.

The Board rejected B.E.'s argument that Guyot does not disclose demographically targeted advertising simply because Guyot does not use the word "demographic." *Id.* at *7–8. It found that Guyot discloses a database with subscriber data and subscriber statistics, and the subscriber data includes the subscriber's identification information, password, and "personal profile . . . used to target specific advertisements to the subscriber." *Id.* at *8. The subscriber statistics include "advertisements distributed to the subscriber, the number of times each advertisement has been displayed," and "information on Internet sites that the subscriber has accessed over a predetermined period." *Id.* The Board concluded that the subscriber statistics are within the broadest reasonable interpretation of "demographic information" because the statistics contain collected information about the subscriber, e.g., Internet sites accessed, without identifying the subscriber. *Id.* at *9. Internet sites accessed is a behavior characteristic within the scope of "demographic information." *Id.*

B.E. argues on appeal that (1) Guyot does not disclose any form of the word "demographic" or provide any other express or inherent disclosure of the use of demographic information in targeting advertising, and (2) a subscriber's Internet usage cannot be "demographic information" because Internet usage falls under "computer usage information," which is a different claim term. Both of these arguments lack merit because B.E. ignores the agreed-upon claim construction for demographic information. It is not necessary for Guyot to use the word "demographic" to disclose "collected characteristic information about a user that does not identify the user" because "demographic information" is not part of the construction. *Id.* "Computer usage information" is also within the scope of "demographic information," as con-

strued, and B.E. did not request before the Board that demographic information exclude computer usage information.[4]  *Id.* at \*9.  Substantial evidence supports the Board's finding that Internet usage information is a behavior characteristic, and that Guyot teaches the use of collected characteristic information to target advertising to subscribers, within the scope of "providing demographically-targeted advertising to a computer user." *Id.*

The Board also rejected B.E.'s position that the limitation, "providing a unique identifier to the computer," requires that (1) the unique identifier be provided by the server, and (2) the unique identifier identify the computer. *Id.* at \*10.  We agree with the Board because we rejected B.E's claim construction position that the "unique identifier" is limited to identifying the user's "computer" or that the server be the "source" of the unique identifier.  Rather, because the claim language is unrestricted, the unique identifier could be provided by "any system, process, or entity," and it requires only that the information be uniquely identified. *Id.* at \*11.  We also agree that Guyot's subscriber data is a unique identifier that identifies the subscriber statistics associated with each user. *Id.*  B.E. itself concedes that "Guyot's Subscriber Data uniquely identifies the information associated with the subscriber."  Reply Br. at 19.  The Board correctly found that Guyot uses subscriber data and subscriber statistics to provide targeted advertising; the subscriber data includes the subscriber's personal profile; and the sub-

---

    [4]    Microsoft asserts that B.E. waived its argument that Guyot's Internet browsing history fails to disclose the use of demographic information in targeting advertisements, but B.E. did argue to the Board that Guyot's personal profile contains Internet browsing history and does not contain demographic information, so we decline to find this argument waived.

scriber statistics contain Internet usage information. *Microsoft Written Decision*, at \*11. Thus, we agree with the Board that Guyot's subscriber data is a unique identifier.

Finally, the Board rejected B.E.'s position that "transferring a copy of said software to the computer in response to a download request by the user" requires the user to be aware that he has requested a new version of the software for download. *Id.* at \*9–10. We agree with the Board that Guyot teaches "transferring a copy of the software in response to a download request by the user" because the claims do not have an intent requirement. B.E.'s arguments that a subscriber is unaware of a download request by his computer is unavailing because this limitation does not require a user's intent to request a download, only that the download request occurs as a result of the user's actions through his computer. Guyot explains that a subscriber can click a "connection button" to connect to the server, which evaluates the necessity of downloading the latest version of software, and if yes, a URL address is provided to the subscriber's computer, which downloads the software. *Id.* The manual selection of Guyot's "connection button" by a subscriber causes his computer to request a download of the latest version of the software, which is sufficient to meet the requirements of this claim limitation. *Id.*

We affirm because the Board had substantial evidence to find that Guyot anticipates claims 11–14 and 16–19.

IV. Obviousness of Claims 20–22 in View of RFC 1635

Obviousness requires assessing (1) the "level of ordinary skill in the pertinent art," (2) the "scope and content of the prior art," (3) the "differences between the prior art and the claims at issue," and (4) "secondary considerations" of non-obviousness such as "commercial success, long felt but unsolved needs, failure of others, etc." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

Claim 20 depends on claim 11 and recites requesting and receiving demographic information in response to a user request to download software, prior to providing the user with download access. '314 patent col. 24, ll. 9–14. Claims 21–22 recite examining demographic information for required information before providing a user with download access, or providing anonymous download access in exchange for demographically-relatable computer usage information. '314 patent col. 24, ll. 15–27.

B.E. assigns error to the Board for failing to establish a motivation to combine Guyot and RFC 1635, arguing that a person of ordinary skill in the art would not have considered an FTP protocol in seeking a solution to obtaining answers to a user questionnaire.[5] Microsoft responds that RFC 1635 is analogous art because it was "reasonably pertinent to the particular problem with which the inventor is involved." *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1375 (Fed. Cir. 2012). Microsoft explains that B.E. misstates the '314 patent's field of invention as "collect[ing] information using a questionnaire" because RFC 1635 is actually from the same field, i.e., "provid[ing] a user . . . with access to information resources via the Internet." Appellee Br. at 65.

We agree with Microsoft. The '314 patent is not directed to a questionnaire, but to a "Computer Interface Method and Apparatus with Targeted Advertising." '314 patent Title. It provides a "method and apparatus for providing an automatically upgradeable software applica-

---

[5] We affirm the Board's finding that claim 15 would have been obvious based on Guyot and Robinson, which B.E. does not challenge. Claim 15 depends on claim 11 and recites the use of a cookie to identify a user. We agree that a person of ordinary skill would have been motivated to combine Guyot and Robinson to arrive at claim 15.

tion that includes targeted advertising based upon demographics and user interaction with the computer." '314 patent Abstract. Claim 20 recites not only requesting and receiving demographic information, but also accessing and downloading software. Claim 22 recites anonymous download access. A person of ordinary skill in the art would have considered FTP protocols, including RFC 1635, in creating or improving upon a system to access and download software. B.E. concedes that the FTP protocol "was designed to make it easy to download software and files without having to answer questions." Reply. Br. at 22. The Board properly found that a person of ordinary skill would have been motivated to combine Guyot with RFC 1635 because he or she would not have been looking at "questionnaires," but at methods of input and output in GUI systems that allow for the access and download of software between a client computer and a server. The FTP protocol fits squarely within this field. Appellee Br. at 65. B.E. makes no separate arguments for claims 21–22.

Therefore, we affirm the Board's finding that claims 20–22 would have been obvious in view of Guyot and RFC 1635.

## V. B.E.'s Motion to Amend

The Board denied B.E.'s contingent motion to amend, based on B.E.'s failure to provide a claim construction or point out with particularity the written description support for B.E.'s proposed new limitations. B.E. simply used a string citation to support its proposed substitute limitations, which included "selecting advertising content for transfer to the computer in accordance with real-time." J.A. 1602–03. The Board found that it was unclear whether the "selecting" or "transfer" was in accordance with "real-time." It also found that B.E.'s motion did not meet B.E.'s burden to establish written description support under 37 C.F.R. § 42.121(b) (2015), which explained

that a "motion to amend claims must . . . set forth: (1) The support in the original disclosure of the patent for each claim that is added or amended . . . ."

In reviewing the Board's interpretation of Patent and Trademark Office regulations, we apply "the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706." *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1306 (Fed. Cir. 2015). "[W]e set aside actions of the Board that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* "We accept the Board's interpretation of Patent and Trademark Office regulations unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'" *Id.*

We agree with the Board that B.E. did not meet its burden to show written description support for the proposed substitute limitations.[6] B.E. argues that had the Board simply read page 10, lines 1–13 of the original specification, it would have understood that the "identifiers permit real time, reactively-targeted advertising since the program can respond to user interaction with the computer to determine whether the input relates to a particular category of information, and, if so, can select advertising related to that category of information." '314 patent col. 6, ll. 3–7. But B.E. did not present this argument to the Board. B.E. only provided a string citation to eighteen different pages of the '314 patent's original specification, without explaining how those various pages supported each of the proposed substitute limitations.

B.E. also argues that the Board previously allowed a patent owner to support a motion to amend using a string citation in *International Flavors & Fragrances Inc. v.*

---

[6] B.E. does not challenge the Board's conclusion that B.E. bears the burden to show written description support for the proposed substitute claims.

*United States*, No. IPR2013-00124, 2014 WL 2120542 (P.T.A.B. May 20, 2014). *International Flavors*, however, is not controlling, and other Board decisions have found that such a bare string citation is insufficient to establish written description support. *See Greene's Energy Grp., LLC v. Oil States Energy Services, LLC*, No. IPR2014-00216, 2015 WL 2089371, at *14 (P.T.A.B. May 1, 2015) ("A string citation does not explain how the original disclosure of the application relied upon reasonably conveys to a person the features intended to be encompassed by the proposed substitute claims."); *Respironics, Inc. v. Zoll Med. Corp.*, No. IPR2013-00322, 2014 WL 4715644, at *13 (P.T.A.B. Sept. 17, 2014) ("Zoll's string citations amount to little more than an invitation to us (and to Respironics, and to the public) to peruse the cited evidence and piece together a coherent argument for them. This we will not do; it is the province of advocacy."), *vacated and remanded on other grounds*, No. 2015-1485, 2016 WL 4056094, at *1 (Fed. Cir. July 29, 2016). We find that the Board did not err in denying B.E.'s motion to amend. Because B.E. did not meet its burden to show written description support for its proposed substitute claims, we need not reach the issue of claim construction.[7]

## CONCLUSION

For the foregoing reasons, we affirm the Board's finding that Guyot anticipates claims 11–14 and 16–19 of the '314 patent. We also affirm its finding that claim 15 would have been obvious in view of Guyot and Robinson, and that claims 20–22 would have been obvious in view of Guyot and RFC 1635. Finally, we affirm the Board's denial of B.E.'s motion to amend.

---

[7] We also reject B.E.'s complaint of a fifteen-page limit for motions to amend because B.E. used only thirteen pages for its motion.

Because we affirm the Board's finding that claims 11–22 are unpatentable based on Microsoft's petition, we need not resolve B.E.'s appeals relating to Google's and Facebook's parallel petitions and dismiss them as moot.

**AFFIRMED-IN-PART, DISMISSED-IN-PART**